*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0772**

Jason Donald Matakis, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 3, 2017
Affirmed
Larkin, Judge**

Crow Wing County District Court
File No. 18-CR-10-3074

Bradford Colbert, Peter LaCourse (certified student attorney), St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Donald F. Ryan, Crow Wing County Attorney, Rockwell J. Wells, Assistant County Attorney, Brainerd, Minnesota (for respondent)

        Considered and decided by Larkin, Presiding Judge; Hooten, Judge; and Reilly, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges the postconviction court's denial of his second postconviction petition as time-barred, arguing that his petition falls under the interests-of-justice exception to the two-year time limit in the postconviction statute. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Jason Donald Matakis with three counts of first-degree criminal sexual conduct and three counts of second-degree criminal sexual conduct. The complaint alleged that Matakis regularly engaged in sexual intercourse with his daughter when she was between the ages of 9 and 11.

Matakis entered an *Alford* guilty plea to one count of first-degree criminal sexual conduct, pursuant to a plea agreement in which the state agreed to request a 144-month prison term and dismiss the remaining charges. During the plea hearing, Matakis's attorney asked him, "[H]as anyone made any threats or promises to you to get you to plead guilty today?" Matakis responded, "No." Matakis submitted a petition in support of his guilty plea, which reiterated that no one had made any threats or promises to get him to plead guilty.

On May 12, 2011, the district court sentenced Matakis to a 144-month prison term. Matakis did not file a direct appeal.

In September 2012, appellate counsel was appointed to represent Matakis. In December, Matakis mailed his appellate attorney a detailed statement listing potential justifications for plea withdrawal.

2

On May 10, 2013, three days before expiration of the two-year time limit on postconviction petitions, Matakis's appellate attorney filed Matakis's first postconviction petition, seeking to withdraw his plea on the grounds that it "was not knowingly, voluntarily, and intelligently made" because "there is reason to question the accuracy of the factual basis underlying the plea and the circumstances under which he pled guilty suggest that it was not voluntarily entered." The postconviction petition stated that "[d]ue to conflicting schedules with caseworkers at MCF-Faribault and [Matakis's] counsel," necessary documentation for the petition "could not be finalized prior to the filing of [the] petition." The petition stated that "[c]ounsel will obtain the necessary records, and then provide a Memorandum of Law in Support of the Petition for Postconviction Relief with an affidavit from petitioner."

On June 4, the postconviction court denied Matakis's petition, reasoning that Matakis "failed to provide any facts at all to support [his] claim that his plea was not properly entered into, and therefore his Petition did not meet the content requirements of [the postconviction-relief statute]." Matakis appealed to this court. We affirmed, concluding that Matakis's "petition does not allege any facts necessary to justify the relief he seeks and its promise of a later pleading is insufficient." *Matakis v. State*, 842 N.W.2d 689, 693 (Minn. App. 2014), *aff'd*, 862 N.W.2d 33 (Minn. 2015).

The supreme court granted review. Matakis obtained new appellate counsel and moved to stay the appellate proceedings in order to submit evidence to the district court regarding his initial appellate attorney's ineffectiveness. *Matakis v. State*, 862 N.W.2d 33,

3

39 n.6 (Minn. 2015). The supreme court denied the motion because Matakis did not claim ineffective assistance of appellate counsel in his petition. *Id.*

On April 8, 2015, the supreme court affirmed this court's decision. *Id.* at 41. The supreme court concluded that the petition lacked "a factual basis for the suggestion that [Matakis's] guilty plea was improper." *Id.* at 37. The supreme court acknowledged that Matakis may have had factual support for his claim that was not included in the petition. *Id.* at 38. But the supreme court stated that "under the postconviction statute, the postconviction court is not required to order an evidentiary hearing purely on the basis of the potential of new, undisclosed information." *Id.* The supreme court also stated that it was "aware that Matakis did not file a direct appeal and that [its] decision . . . may mean that his guilty plea will not be subject to appellate review," but it ultimately concluded that Matakis did not have a right to an evidentiary hearing on his petition because the petition failed to meet the factual requirements of the postconviction statute. *Id.* at 34, 40.

On January 6, 2016, Matakis filed his second postconviction petition. Matakis once again sought "to withdraw his plea because it was not voluntary." Matakis included a supporting affidavit, asserting that shortly before he pleaded guilty, he had learned that his daughter "had been cutting her wrists with a knife." Matakis's affidavit also stated that a social worker testified at a CHIPS hearing that Matakis's daughter was "stressed about having to testify at [Matakis's] criminal trial" and that a plea deal was proposed to Matakis after the CHIPS hearing that "would eliminate the need for [his] daughter to testify at the trial." Matakis alleged that he "would not have pled guilty but for the pressure [he] felt out of concern for [his] daughter" and "felt coerced into pleading guilty." Matakis

4

acknowledged that he filed his petition more than two years after he was sentenced, but he argued that "it [was] nonetheless timely because [he] was denied his constitutional right to the effective assistance of counsel when he first tried to file a postconviction petition."

The postconviction court summarily denied Matakis's petition as untimely.[1] The postconviction court agreed that Matakis's initial appellate counsel had been ineffective and could be a basis to apply the interests-of-justice exception to the two-year time limit on petitions for postconviction relief. However, the postconviction court determined that Matakis did not satisfy the two-year time limit applicable to a claim brought under the interests-of-justice exception. This appeal follows.

## D E C I S I O N

Matakis contends that the postconviction court erred by determining that his petition was time barred. The postconviction statute allows a person convicted of a crime to petition for relief. Minn. Stat. § 590.01, subd. 1 (2014). Generally, a petition for postconviction relief must be filed within two years of the later of "(1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." *Id.*, subd. 4(a) (2014).

A court may hear a petition for postconviction relief filed outside of the two-year timeframe if "the petitioner establishes to the satisfaction of the court that the petition is

---

[1] The state did not challenge the timeliness of Matakis's second postconviction petition. The Minnesota Supreme Court recently stated that a postconviction court can raise and determine a timeliness issue sua sponte, so long as the court gives the parties notice and an opportunity to be heard. *Weitzel v. State*, 883 N.W.2d 553, 560 (Minn. 2016). Matakis does not argue for relief under *Weitzel*. Moreover, because Matakis raised and argued the timeliness issue in his postconviction submissions, *Weitzel*'s requirements are satisfied.

not frivolous and is in the interests of justice." *Id.*, subd. 4(b)(5) (2014). A petition invoking the interests-of-justice exception "must be filed within two years of the date the claim arises." *Id.*, subd. 4(c) (2014). A petitioner's claim for relief under the interests-of-justice exception "arises when the petitioner knew or should have known that he had a claim." *Sanchez v. State*, 816 N.W.2d 550, 560 (Minn. 2012). The "knew or should have known" standard is an objective standard, and not a subjective, actual knowledge standard. *Id.* at 558-59. If a petitioner's request for relief under the interests-of-justice exception is based on ineffective assistance of counsel, the claim arises when the petitioner knew or should have known that counsel was ineffective, and not when petitioner became subjectively aware of the claim. *Id.* at 559-60.

A postconviction court may deny a petition without a hearing if the petition is untimely. *Bolstad v. State*, 878 N.W.2d 493, 496 (Minn. 2016). This court reviews a postconviction court's denial of postconviction relief for an abuse of discretion. *Wayne v. State*, 870 N.W.2d 389, 392 (Minn. 2015). This court reviews the postconviction court's determination regarding when an interests-of-justice claim arose for clear error. *Sanchez*, 816 N.W.2d at 560.

The second postconviction court determined that Matakis knew or should have known that his first appellate attorney was ineffective on June 4, 2013, the date the postconviction court denied Matakis's first petition without an evidentiary hearing. The postconviction court reasoned that all of the elements of ineffective assistance of counsel were apparent on that date and Matakis should have known that "(1) the First Petition was deficient, (2) the First Petition was deficient because of ineffective assistance of appellate

6

counsel, (3) the deficiency resulted in the First Petition being dismissed without meaningful review, and (4) the deficiency caused [Matakis] to miss the two-year post-conviction window without any meaningful review."

Matakis argues that "[u]ntil the Minnesota Supreme Court issued [its] opinion" affirming the denial of his first postconviction petition, he "did not have a claim for ineffective assistance of counsel." Matakis relies on *Noske v. Friedberg*, 670 N.W.2d 740 (Minn. 2003). In *Noske*, the supreme court explained:

> A legal malpractice cause of action based on a criminal conviction resulting from alleged ineffective assistance of defense counsel accrues and the statute of limitations begins to run when the cause of action can withstand a motion to dismiss under Rule 12 of the Minnesota Rules of Civil Procedure on each element required to bring such a cause of action. In order to demonstrate that an attorney proximately caused a plaintiff's damages and that but for the attorney's negligence the criminal defendant-plaintiff would have been acquitted, a plaintiff must first obtain relief from the criminal conviction.

*Id*. at 741. The supreme court based its conclusions on the general rule that "a person convicted of a crime may not attack a valid criminal conviction in a subsequent civil proceeding." *Id.* at 744, 746.

Matakis's reliance on *Noske* is unavailing. In *Sanchez*, the supreme court explained that:

> *Noske* does not provide a basis for us to depart from the objective standard in determining when a claim arises under Minn. Stat. § 590.01, subd. 4(c). In *Noske*, we followed our well-established rule that a claim arises when it will survive a motion to dismiss for failure to state a claim. Sanchez is correct that a claim of legal malpractice based on legal advice in a criminal matter cannot arise until sometime after the conviction has been overturned. This rule of accrual, however,

7

has nothing to do with the plaintiff's subjective or objective knowledge of his claim. In Minnesota, a valid criminal conviction cannot be attacked in a subsequent civil proceeding because of the conviction's presumption of regularity. The plaintiff in *Noske* therefore could not bring a claim for legal malpractice—and thus his claim did not arise—until his conviction was overturned. But the plaintiff's subjective awareness of the malpractice has no bearing on the accrual of the plaintiff's cause of action, and *Noske* does not suggest that we should vary from our usual rule that a claim arises when the claimant knew or should have known of the claim.

816 N.W.2d at 559-60 (citations omitted).

Matakis argues that "[i]t is unrealistic, at best, to suggest that somehow [he] should have understood that his attorney was providing him ineffective assistance of counsel" when the postconviction court denied his first petition, given that he was represented by the same attorney from the time he filed the first petition until his petition for review was granted by the supreme court. This argument is unavailing because it is based on a subjective standard. We apply an objective standard. *See id.* at 560. And under an objective standard, Matakis knew or should have known that his first appellate attorney was ineffective when the postconviction court dismissed his petition because it did not include any of the reasons that he had provided his attorney as support for the petition.

In sum, the second postconviction court did not clearly err by determining that Matakis should have known that his first appellate attorney was ineffective when the first postconviction court denied his petition. Because Matakis filed his second postconviction petition more than two years after the denial, his request for relief under the interests-of-justice exception is untimely. *See* Minn. Stat. § 590.01, subd. 4(c). The postconviction

8

court therefore did not abuse its discretion by denying Matakis's second petition summarily.

Although we affirm based on the postconviction court's determination that Matakis's second petition was untimely, we also note that the petition is frivolous. A court may hear a petition for postconviction relief filed outside of the two-year time limit if "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." Minn. Stat. § 590.01, subd. 4(b)(5). A petition is frivolous if "it is perfectly apparent, without argument, that the claims in the petition lack an objective, good-faith basis in law or fact." *Wayne v. State*, 860 N.W.2d 702, 706 (Minn. 2015) (quotation omitted).

Matakis's second petition asserts that he should be allowed to withdraw his guilty plea as involuntary because he "pled guilty because he was concerned about his daughter's well-being after he learned that she was cutting herself because she was afraid to testify at his trial." "[T]he court must allow a defendant to withdraw a guilty plea upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). To be valid, a guilty plea must be "accurate, voluntary, and intelligent." *Perkins v. State*, 559 N.W.2d 678, 688 (Minn. 1997). The voluntariness of a plea is determined by considering all of the relevant surrounding circumstances. *State v. Danh*, 516 N.W.2d 539, 544 (Minn. 1994).

"The voluntariness requirement ensures a defendant is not pleading guilty due to improper pressure or coercion." *Raleigh*, 778 N.W.2d at 96. Improper pressure or coercion

9

generally requires a threat or promise made to induce a defendant to plead guilty. *See, e.g.*, *Brady v. United States*, 397 U.S. 742, 750, 90 S. Ct. 1463, 1470 (1970) ("[A]gents of the State may not produce a plea by actual or threatened physical harm or by mental coercion overbearing the will of the defendant."); *Nelson v. State*, 880 N.W.2d 852, 861 (Minn. 2016) (noting the fact that a defendant denied that he had been "subjected to threats or promises" was further evidence that his plea was voluntary); *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000) ("A guilty plea cannot be induced by unfulfilled or unfulfillable promises . . . .").

Matakis's postconviction submissions do not allege that the state, his district court attorney, or anyone else used his daughter's circumstances to induce him to plead guilty. Instead, his submissions suggest that he pressured himself to plead guilty. Although Matakis may have felt pressured to plead guilty out of concern for his daughter, he does not cite authority supporting his contention that his concern for his daughter's well-being amounted to coercion sufficient to invalidate his plea. Because it is apparent that Matakis's plea-withdrawal theory lacks an objective, good-faith basis in law or fact, his postconviction petition is frivolous and would not qualify for a hearing even if it were timely. *See* Minn. Stat. § 590.01, subd. 4(b)(5).

Lastly, we observe that Matakis's second postconviction petition may also be barred under caselaw. "[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976). "The *Knaffla* rule provides that when a petition for postconviction relief follows a direct

10

appeal of a conviction, all claims raised in the direct appeal and all claims of which the defendant knew or should have known at the time of the direct appeal are procedurally barred." *Hooper v. State*, 838 N.W.2d 775, 787 (Minn. 2013) (quotation omitted). "The *Knaffla* rule also bars consideration of claims that *were raised*, or could have been raised, in a previous postconviction petition." *Id.* The *Knaffla* rule is intended to preserve "the goals of finality and efficiency where appropriate and overrides them only where necessary in the interests of justice." *Torres v. State*, 688 N.W.2d 569, 572 (Minn. 2004).

A court may consider an otherwise *Knaffla*-barred claim if "(1) the defendant presents a novel legal issue or (2) the interests of justice require the court to consider the claim." *Hooper*, 838 N.W.2d at 787 (quotation omitted). "To be reviewed in the interests of justice, a claim must have merit and be asserted without deliberate or inexcusable delay." *Buckingham v. State*, 799 N.W.2d 229, 231 (Minn. 2011) (quotation omitted).

Matakis's first postconviction petition requested plea withdrawal based on his claim that "the circumstances under which he pled guilty suggest that [the plea] was not voluntarily entered." Matakis's second postconviction petition once again requested plea withdrawal, claiming that his plea "was not voluntary."[2] Allowing Matakis to go forward with the second petition would result in consideration of a claim that was previously raised, contrary to the *Knaffla* rule. And because Matakis has not provided a good-faith basis in law or fact for his second plea-withdrawal claim, the claim lacks merit and the interests-

---

[2] Although Matakis asserted ineffective assistance of counsel as a basis to avoid the two-year time limit on postconviction petitions, he did not claim ineffective assistance of counsel as a separate basis for postconviction relief.

of-justice exception to the *Knaffla* rule would not apply.  In sum, Matakis's plea withdrawal claim appears to be barred under caselaw, as well as statute.

    **Affirmed.**